**Carl R. SCHRACHTA,**
**Plaintiff-Appellant,**
v.
**Donald L. CURTIS, M.D., Acting Administrator of Veterans Administration,**
**Defendant-Appellee.**
No. 83–2869.

United States Court of Appeals,
Seventh Circuit.

Submitted Dec. 19, 1984.*
Decided Jan. 21, 1985.

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P.; Circuit Rule 14(f). No such statement having been filed, the appeal has been submitted on the briefs and record.

ance evaluations. Plaintiff contends that the appraisals of his performance are without basis and are part of a scheme by his supervisors to ensure that Schrachta keep his present job; he alleges that because of a hiring freeze his position could not be filled if he left. The statutory basis for this suit is purportedly the Civil Service Reform Act of 1978 ("CSRA"), in particular 5 U.S.C. § 2301 (1982),[1] which Schrachta argues includes an implied right of action for federal employees. The district court held that § 2301 contains no implied private right of action and dismissed the case for lack of subject matter jurisdiction. We affirm.

### I.

In *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court established a four-part test to determine whether a statute includes an implied private right of action: (1) whether the plaintiff is one of the class for whose "especial benefit" the statute was enacted; (2) whether there is any explicit or implicit indication of legislative intent, either to create or deny a private right of action; (3) whether an implied remedy is consistent with the statute's underlying purposes; and (4) whether the cause of action is traditionally within the province of state law. *Id.* at 78, 95 S.Ct. at 2087. Recent decisions, however, including opinions of this court,[2] indicate that the focal point of the inquiry is legislative intent: did Congress intend to create a private right of action when it enacted the statute? *Daily Income Fund, Inc. v. Fox*, — U.S. —, 104 S.Ct. 831, 839, 78 L.Ed.2d 645 (1984); *Merrill Lynch, Pierce, Fenner & Smith v. Curran*, 456 U.S. 353, 377–78, 102 S.Ct. 1825, 1838–39, 72 L.Ed.2d 182 (1982). Accordingly, the factors delineated in *Cort v.*

Gerald A. Goldman, Goldman & Marcus; Robert E. Riley, Goldman & Marcus, Chicago, Ill., for plaintiff-appellant.

Gail C. Ginsberg, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, for defendant-appellee.

Before CUMMINGS, Chief Judge, and CUDAHY, and POSNER, Circuit Judges.

### PER CURIAM.

Plaintiff Carl Schrachta works for the Veterans Administration ("VA") as a warehouseman and has unsuccessfully applied for a number of other positions within the VA. The complaint alleges that Schrachta is qualified for these other jobs but that his applications for transfer or promotion have been denied because of poor job perform-

---

1. The complaint alleged an additional statutory basis for this action: 5 U.S.C. § 4302. Schrachta has abandoned his § 4302 claim on appeal.
 We also note that plaintiff does not claim that defendant has violated his constitutional rights. *See Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 2411 & n. 14, 2415–17, 76 L.Ed.2d 648 (1983); *Vest v. United States Dept. of the Interior*, 729 F.2d 1284, 1286–87 (10th Cir.1984); *Gleason v. Malcom*, 718 F.2d 1044, 1047–48 (11th Cir.1983);

*compare Andrade v. Lauer*, 729 F.2d 1475, 1490–93 (D.C.Cir.1984).

2. *See, e.g., Burroughs v. Hills*, 741 F.2d 1525, 1539 (7th Cir.1984) (Posner, J., concurring); *id.* at 1540 (Flaum, J., concurring); *Michels v. United States Olympic Committee*, 741 F.2d 155, 157 (7th Cir.1984); *Mid-America Nat'l Bank of Chicago v. First Savings and Loan Ass'n of South Holland*, 737 F.2d 638, 639–40 (7th Cir.1984).

*Ash* are now used to determine Congressional intent. *Daily Income Fund,* 104 S.Ct. at 839.

## II.

The CSRA, scattered throughout Title 5 of the U.S. Code, is a detailed, comprehensive effort to regulate employee-management relations in the federal government. Of particular relevance to the case before us are the Act's provisions for administrative and judicial review of federal personnel decisions. The statutory scheme divides federal personnel actions into four categories and provides for different types of review for each classification: (1) "adverse actions," *see* 5 U.S.C. § 7512 (1982), for which judicial review is available following administrative proceedings and an administrative appeal, *see* 5 U.S.C. §§ 7513, 7701, 7703 (1982); (2) "adverse actions" for which administrative proceedings are required, 5 U.S.C. § 7503 (1982), but for which there is apparently no administrative appeal, *see Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 2415 n. 28, 76 L.Ed.2d 648 (1983) (dictum); Sen.Rep. No. 95–969, 95th Cong., 2d Sess. 46–47, *reprinted in* 1978 U.S.Code Cong. & Ad.News 2723, 2768–69; (3) "prohibited personnel practices," defined in 5 U.S.C. § 2302(b) (1982), which may be reviewed by the Office of Special Counsel ("OSC"), 5 U.S.C. § 1206 (1982);[3] and (4) minor personnel actions which are left to agency discretion and are not reviewable administratively or judicially. *See Carducci v. Regan,* 714 F.2d 171, 175 (D.C. Cir.1983);[4] *Broadway v. Block,* 694 F.2d 979, 981–84 (5th Cir.1982). In addition, cases involving alleged discrimination under Title VII of the Civil Rights Act of 1964, the Equal Pay Act, the Rehabilitation Act, and the Age Discrimination in Employment Act must be filed in federal district court. 5 U.S.C. § 7703(b)(2) (1982).

The conduct of which plaintiff complains clearly does not fit into either of the first two categories, and although it could conceivably fall within the third, *see* § 2302(b)(4), he does not make this argument; rather, Schrachta contends that a private right of action is implied under 5 U.S.C. § 2301 (1982), which sets forth a series of "merit system principles" in § 2301(b) to govern federal personnel management practices. This would seem to put plaintiff's case in the fourth category, for which the statute provides no relief.

A host of federal courts have considered and rejected the proposition that the CSRA provides an implied private right of action. *Veit v. Heckler,* 746 F.2d 508 (9th Cir.1984); *Carducci v. Regan; Braun v. United States,* 707 F.2d 922 (6th Cir.1983); *Carter v. Kurzejeski,* 706 F.2d 835 (8th Cir.1983); *Broadway v. Block; Borrell v. United States Int'l Communications Agency,* 682 F.2d 981 (D.C.Cir.1982).[5] None have dis-

---

**3.** Because plaintiff did not seek relief from the OSC, we need not decide whether, and the extent to which, OSC decisions are judicially reviewable. *See Cutts v. Fowler,* 692 F.2d 138, 140 (D.C.Cir.1982); *Wren v. Merit Systems Protection Board,* 681 F.2d 867, 871–72, 875 (D.C.Cir. 1982); *Frazier v. Merit Systems Protection Board,* 672 F.2d 150, 162 n. 41 (D.C.Cir.1982).

**4.** The D.C. Circuit listed only three categories in *Carducci;* it seems to have missed our second classification. We have subdivided "adverse actions" because the legislative history cited above emphasizes the contrast between subchapter I of Title 5, chapter 75 (5 U.S.C. §§ 7501–7504) and subchapter II (5 U.S.C. §§ 7511–7514). The regulations make the same distinction. *See* 5 C.F.R. § 1201.3(a)(3) (1984); *compare* 5 C.F.R. § 752.201–.203 (1984) with 5 C.F.R. § 752.-405(a) (1984).

**5.** The only case cited by plaintiff in support of his position is *Gilley v. United States,* 649 F.2d 449 (6th Cir.1981). In *Gilley,* the Sixth Circuit ruled that a district court could use its traditional equitable powers to issue a preliminary injunction against the transfer of a federal employee while his administrative appeal of the transfer decision was pending. The court did not, however, discuss the issue whether an implied right of action exists under the CSRA (it did not, for example, employ the analysis prescribed by *Cort v. Ash* and its progeny). And to the extent that the *Gilley* court implicitly decided the question in the affirmative, the continued validity of the case is doubtful after the Sixth Circuit's decision in *Braun v. United States,* 707 F.2d 922 (6th Cir.1983), which held that no implied private right of action existed in the CSRA's provisions protecting "whistleblowers" against retaliation. Indeed, *Gilley* has never been cited by the Sixth Circuit; the holding in

cussed the issue with respect to § 2301, but their reasoning is equally applicable here. At least two district courts have rejected arguments that § 2301 creates an implied private right of action. *Watson v. United States Dept. of Housing and Urban Development,* 576 F.Supp. 580, 585 n. 5 (N.D.Ill. 1983); *Favors v. Ruckelshaus,* 569 F.Supp. 363, 369 (N.D.Ga.1983).

 To begin with, plaintiff has not cited any legislative history indicating that Congress intended to create a private right of action under the CSRA. To the contrary, the detailed administrative framework established by the Act convinces us, as it has other courts, that Congress intended the remedies provided by the CSRA to be the exclusive means to remedy violations of the Act's substantive provisions. *Veit v. Heckler,* 746 F.2d at 510–11; *Carducci v. Regan,* 714 F.2d at 174; *Braun v. United States,* 707 F.2d at 925; *Carter v. Kurzejeski,* 706 F.2d at 840. *See Bush v. Lucas,* 103 S.Ct. at 2406 (Because a federal employee's claims that his First Amendment rights were violated "arise out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States, we conclude that it would be inappropriate for us to supplement the regulatory scheme with a new judicial remedy"). Had Congress wanted to provide for administrative or judicial review of violations of § 2301's principles, the rest of the Act demonstrates that it knew how to do so. Moreover, an implied private remedy for minor personnel actions such as those allegedly involved here would be inconsistent with the complex remedial

structure established by Congress. "[T]he exhaustive remedial scheme of the CSRA would be impermissibly frustrated by permitting, for lesser personnel actions not involving constitutional claims, an access to the courts more immediate and direct than the statute provides with regard to major adverse actions." *Carducci v. Regan,* 714 F.2d at 174. Finally, Congress explicitly rejected the idea that § 2301 could serve as the basis for an employee's suit:

> The conference substitute in section 2301 adopts the House provision concerning the application of merit system principles. Unless a law, rule or regulation implementing or directly concerning the principles is violated (as under section 2302(b)(11)), the principles themselves may not be made the basis of a legal action by an employee or agency.

H.R.Conf.Rep. No. 95–1717, 95th Cong., 2d Sess. 128, *reprinted in* 1978 U.S.Code Cong. & Ad.News 2860, 2861.

Congressional intent seems clear to us. There is no implied right of action under § 2301 to remedy alleged violations of the section's principles. The district court's judgment is AFFIRMED.

---

*Braun,* on the other hand, has recently been reaffirmed by that court, *Windsor v. The Tennessean,* 726 F.2d 277, 278 (6th Cir.) (denying petition for rehearing), *cert. denied,* —— U.S. ——, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984).

A recent First Circuit opinion, released after briefing in this case, also arguably supports Schrachta's argument. In *Dugan v. Ramsay,* 727 F.2d 192 (1st Cir.1984), the plaintiff challenged as arbitrary and unconstitutional the criteria used by the Office of Personnel Manage-

ment in screening out applicants for administrative law judge positions. After the ALJ Ratings Panel rejected Dugan's arguments, he filed suit in federal court under the Administrative Procedure Act ("APA"). The First Circuit ruled that the CSRA did not preclude judicial review under the APA. Since Schrachta has not asserted the APA as a jurisdictional basis for his suit, we express no opinion on the correctness of the First Circuit's holding.